GEMMELL BROTHERS COMPANY v. ADDIE MARIE DURHAM.

Eastern Section. July 27, 1929.

Petition for Certiorari denied by Supreme Court, October 19, 1929.

98

Worley & McAmis, of Kingsport, and R. L. Pennington, of Bristol, for plaintiff in error.

Paul E. Divine, of Johnson City, and Dodson & Ferguson, of Kingsport, for defendant in error.

THOMPSON, J.  The plaintiff below, Addie Marie Durham, has recovered verdict and judgment for $2750, and court costs against the defendants below, Gemmell Brothers Company, and Sanfort Tutterrow.  One of said defendants, Gemmell Brothers Co., has appealed to this court and has assigned errors.

A Ford truck owned by Gemmell Brothers Company and driven by Tutterrow struck the plaintiff and inflicted severe injuries on her. .Under the evidence it is clear that Tutterrow's negligence was the proximate cause of the accident and that he was running at a speed of thirty miles per hour at the time of the accident.

The declaration was in three counts.  The first count alleged that Tutterrow, while in the employ of Gemmell Bros. Co., and while driving the truck in the scope of his employment and on the business of said Gemmell Bros. Co., negligently and carelessly drove said truck at a high rate of speed, left the highway and skidded, etc., and ran said truck into the plaintiff.  The second count, in addition to negligent acts of Tutterrow, alleged that he was driving said truck on the business of Gemmell Bros. Co., and within the scope of his employment, etc., and that he was a careless, negligent, incompetent and incapable driver, and that Gemmell Brothers Company, when they employed him, well knew that he was careless, negligent and incompetent, etc., and was unfitted by age and experience to drive said truck, and that it was dangerous to place said truck in his hands to drive on the public highways.  The third count alleged that Tutterrow was driving said truck within the scope of his employment and on the business of Gemmell Brothers Company and that he was driving it at a speed of more than thirty miles per hour in willful violation of the statutes of Tennessee,

It will be observed that it was alleged in all three of the counts that Tutterrow was driving within the scope of his employment and on the business of Gemmell Brothers Company; that the first count alleged common-law negligence on the part of Tutterrow; that the second count alleged common-law negligence on the part of Tutterrow and that at the time Gemmell Brothers Company employed him they knew that he was a careless and incompetent driver and that it was dangerous to place the truck in his hands to drive, etc., and that the third count alleged that Tutterrow was driving at a speed of thirty miles per hour in willful violation of the statutes.

. The suit was instituted on October 8, 1927, and the declaration was filed on December 20, 1927. On October 14, 1927, the plaintiff filed an affidavit as follows:

"Addie Marie Durham makes oath that Gemmell Bros. Company, et al., are justly indebted to her in the sum of under $15,000. due by damages, which remains wholly unpaid; that she has commenced suit against the said Gemmell Bros. Company, et al., for recovery of said damages, before the Law Court at Kingsport, Tennessee, where the same is now pending, and that the said Gemmell Bros. Company, et al., are nonresidents of the State of Tennessee, and that the Ford truck driven by said defendant, his agents and servants, and which truck thru negligent operation of which caused the accident and injury, was at the time of said damages and injury to plaintiff being driven or run as aforesaid on a public road or highway of the State in excess of thirty miles per hour. Affiant therefore asks in aid of said suit that an ancillary attachment issue against the estate of the said Gemmell Bros. Company, et al."

The attachment which issued and the officer's return thereon are as follows:

"To Any Lawful Officer Of Sullivan County:

"Whereas, Addie Marie Durham has complained to me on oath that Gemmell Bros. Company, et al., are justly indebted to her in the sum of under $15,000, for damages, which remains wholly unpaid; that she has commenced suit against the said Gemmell Bros. Company, et al., for a recovery for the amount due thereby in the Law Court at Kingsport, Tennessee, where the same is now pending, and that said Gemmell Bros. Company, et al., are nonresidents of the State; and, whereas, the said Addie Marie Durham has taken the pauper's oath as provided by law in attachment cases, and asks the issuance of an ancillary attachment in aid of her said suit against the estate of Gemmell Bros. Co., et al.: You are therefore commanded to attach said truck and so much of the estate of the said Gemmell Bros. Company, et al., as will be sufficient to satisfy the damages and costs according to the complaint, and such

estate unless replevied, so to secure that the same may be liable to further proceedings thereon to be had in said Low court on the 3rd Monday of November, 1927, when and where you will return this writ and make known how you have executed the same.

"This October 14, 1927.

"J. B. Anderson, clerk,

"W. P. Flora, D. C.

"Came to hand October 15, 1927, and executed as commanded by attaching Ford Truck, Motor No. 12585212, and all electric supplies, equipment and stock and office fixtures in building on Market street, No. 491, Kingsport, Tennessee, being the building where defendants are now located and operating, and returned, to office of issuance.

"This October 15, 1927.

"Paul L. Thompson, D. S."

On October 17, 1927, Gemmell Brothers Company executed a $2500 bond, payable to the plaintiff, and all of the attached property was released and the attachment was dismissed by an agreed order. The condition of this bond was as follows:

"Now the condition of this bond is such, that if the said Addie Marie Durham is successful in said suit and obtains a judgment against said Gemmell Bros. Company, then this bond to the extent of said $2500, shall be and remain in full force and effect for the purpose of paying and satisfying said judgment and costs, but in event Gemmell Bros. Company should pay the amount of said judgment not to exceed said sum of $2500, the amount of this bond, then this bond to be of no further force or effect. It is understood that this bond shall stand in lieu of said property attached."

At the beginning of the trial the following took place as shown by the bill of exceptions:

"Mr. McAmis: Made motion to dismiss attachment upon the ground that the affidavit, as well as the attachment itself, fails to show that the truck attached was being operated in wilful violation of the speed law. In the case of Keller v. Federal Truck Company, 151 Tenn. 427, it was held that in order to entitle the plaintiff to an attachment under this statute, it must be alleged in the affidavit and shown in the attachment that the truck or car that is sought to be attached was at the time of the alleged wrongful act, being operated in wilful violation of this statute. In the case to which I have referred this question was involved and the court expressly held that in order to entitle plaintiff to an attachment that the affidavit must set out expressly that the operation of the car was in wilful violation of the statute.

"The Court: That was a case where the defendant was a resident of the State.

"Mr. McAmis: That is true, but they ask for an attachment on the ground the car was being operated in violation of this statute and that is why we make this motion.

"The Court: Motion overruled.

"Mr. McAmis: Exception."

At the close of the plaintiff's testimony, defendant moved for peremptory instruction on a number of grounds, the last of which was as follows:

"5. Plaintiff cannot assert a lien against said truck because it failed to aver in the affidavit supporting the attachment levied upon said truck, that said car or truck was being operated at the time it struck plaintiff in wilful violation of the statutes of the State of Tennessee, with reference to the operation of motor vehicles upon public highways of the State of Tennessee."

The motion for peremptory instruction was overruled. It was renewed at the conclusion of all the evidence and was again overruled. The cause was submitted to the jury which returned a verdict in personam against both Tutterrow and Gemmell· Brothers Company for $2750. Judgment· was entered on this verdict, but not on the bond. It was simply adjudged that the plaintiff "recover of the defendants, Gemmell Brothers Company, a partnership composed of Tom Gemmell and Thomas M. Gemmell, and the defendant Sanford Tutterrow, said sum of $2750, and all the costs of this cause, for which execution will issue."

The plaintiff proved that Gemmell Brothers Company, a partnership composed of Tom and Thomas M. Gemmell, was engaged in the electrical business at Kingsport; that Sanford Tutterrow who was driving the truck at the time of the accident was an employee of Gemmell Brothers Company; that the truck belonged to Gemmell Brothers Company; that at the time of the accident Tutterrow was driving at a speed of thirty miles per hour or faster, along the slick wet highway; that as he attempted to pass the plaintiff who was about five feet off the paved and travelled part of the highway, he applied his brakes and caused the rear end of the truck to skid around and strike the plaintiff, etc. Undoubtedly Tutterrow was negligent and was running faster than twenty miles per hour. Had the proof stopped here the plaintiff would have been entitled to a judgment in personam against Gemmell Brothers Company because the presumption would have been that Tutterrow was driving within the scope of his employment and on the business of Gemmell Brothers Company. But the accident happened about 1:30 on Saturday afternoon, June 18, 1927, and plaintiff proved by one of her witnesses that the employees of Gemmell Brothers Company did not work on Saturday afternoons, but quit at noon; that Tutterrow was not working on the afternoon of the accident but had borrowed the

truck and was driving it only by permission of Mr. Murray, the manager of Gemmell Brothers Company, for the purpose of getting his laundry. And defendants proved not only said facts but also that when Tutterrow quit work at noon of the Saturday of the accident he drew his week's wages; then went away and ate lunch; that he then returned to the Gemmell Brothers Company's place of business and got permission from Murray to use the truck to get his laundry; that he drove the truck to the laundry and got his clean clothes; that he then drove the truck to a hospital where his sister was employed for the purpose of getting some clean shirts which she had for him and for the further purpose of arranging to go with her a part of the way on a trip which she was expecting to make to Knoxville; and that he was returning from said hospital at the time of the accident. These facts are undisputed and the record shows without even the slightest semblance of contradiction that at the time of the accident the truck had been loaned to Tutterrow; that he was driving it on a mission of his own; and that he was not on any business of Gemmell Brothers Company.

But plaintiff insists that Gemmell Brothers Company rendered themselves liable to plaintiff for a judgment in personam against them by loaning the truck to Tutterrow because (as she insists) they knew that Tutterrow was a careless, negligent, incompetent and incapable driver only eighteen or nineteen years of age and that the loaning of the truck to him to drive on the public highways was dangerous and was negligence on the part of said Gemmell Brothers Company.

At the time of the accident Tutterrow was eighteen or nineteen years of age. He had driven automobiles and trucks for two years. He had been in the employ of Gemmell Bros. Company for six weeks during which time he had frequently driven the truck in question. Although he was negligent at the time of the accident and was running at a speed of about thirty miles per hour, the facts and circumstances with reference to this particular accident do not show that he was in general an incompetent, careless, reckless and inexperienced driver. All there is in the record tending to show that he was careless, incompetent, inexperienced, etc., and that Gemmell Brothers Company knew that he was careless, incompetent, inexperienced, etc., is the following from the plaintiff's witness, Pat Johnson:

"Q. Did Mr. Murray know whether Sanford Tutterrow could drive a car or not? A. He knew he could drive one, but not good, he had been told.

"Mr. McAmis: Objected to as immaterial.

"Mr. Ferguson: That is one of the allegations of this declaration, and is the law.

"Mr. McAmis: I have authority to the effect that is immaterial.

"Mr. Ferguson: We have authority to the contrary.

"The Court: Objection sustained.

"Mr. Dodson: Does your Honor hold we cannot show by this witness what knowledge the superintendent of Gammell Bros., and who was directing the movement of his car, and turned over his car to this man—

"The Court: I sustain the objection.

"Mr. Ferguson: Exception. For the benefit of an appeal, we want this witness' testimony in the record.

"The Court: Write it up and put it in."

Still copying from the bill of exceptions:

"Pat Johnson was again put on the stand, in the absence of the jury and of reporters, and defendant, by counsel, objected to his evidence, which objection the Court sustained. Major Divine, counsel for plaintiff, excepted to the Court's ruling.

"Mr. Ferguson: May it please the court we want to recall Pat Johnson and let him give his testimony out of the presence of the jury as to what he would testify about what Mr. Murray, the manager of Gemmell Brothers Company, knew about Sanford Tutterrow being a reckless and careless driver. We want this testimony so that it can go in the record for the benefit of the Upper Court in the case of an appeal.

"The Court: Alright.

"Whereupon, the jury was excused. Pat Johnson was then again put on the stand in the absence of the jury and testified as follows:

"Q. Mr. Murray was the manager and the man in charge of Gemmell Brothers Company at Kingsport, wasn't he? A. Yes, sir.

"Q. Did Mr. Murray know that Sanford Tutterrow was a careless, reckless driver? A. Yes, sir.

"Q. How did he know this? A. I told him two or three times that he was a careless, reckless driver, and he shouldn't let him drive this truck.

"Q. Do you know of your own knowledge that he was a careless, reckless driver? A. Yes, sir.

"Q. How do you know that he was and is a careless, reckless driver? A. Because I have ridden in the truck with him on various occasions and he drove the truck in a careless and reckless manner.

"Q. Did Mr. Murray know this too? A. Yes, sir, and had been told not to let him drive the truck.

"Q. Why did you consider him a careless, reckless driver? A. Because he couldn't properly steer or control a car."

Notwithstanding the fact that the aboslutely uncontradicted evidence showed that Tutterrow had borrowed the truck and was driving it on a mission entirely his own and not on any business of

Gemmell Brothers Company, the court submitted the case to the jury under a charge which permitted the jury to find that he was driving the truck on the business of Gemmell Brothers Company and to hold said Gemmell Brothers Company liable in personam on that theory.

And notwithstanding the fact that the court excluded the only evidence tending to show that Tutterrow was a careless, reckless, etc., driver, he submitted the case, to the jury under a charge which permitted the jury to return a verdict in personam against Gemmell Brothers Company if they should find that Tutterrow was a reckless and incompetent, etc., driver, and that Gemmell Brothers Company had knowledge or by the exercise of reasonable care should have had knowledge, of this fact at the time they employed Tutterrow.

We do not think any judgment in personam should have been rendered against Gemmell Brothers Company upon the evidence contained in this record—and certainly not upon the theory that at the time of the accident Tutterrow was driving the truck on said company's business.

There is a line of cases holding that an owner of an automobile or truck is liable to a person injured by it when the owner has loaned the automobile or truck to a person whom he knows to be·an incompetent, reckless and careless driver and likely to cause injury to others, and when such person is driving the car or truck at the time of the accident, etc. In such cases the owner is held liable for the injury caused by the borrower's negligence on the ground of his personal negligence in entrusting the automobile or truck to a person who he knows is apt to cause injuries to another in its use. And the holding of these cases applies to cases where an employee is the borrower as well as to cases where a stranger is the borrower. See the footnote to Mitchell v. Churches, 36 A. L. R. 1137, 1143, and 1148.

But it does not seem to us that the foregoing evidence of Pat Johnson, which is the only evidence in the record tending even remotely to show that Tutterrow was a careless, reckless or incompetent driver who Gemmell Brothers Company knew or had reason to believe was apt or likely to injure others, was sufficient to support a judgment in personam against Gemmell Brothers Company under the theory and holding of the above-mentioned line of cases. And this would be true even though the trial court had let said evidence go to the jury and had submitted the case to them under a proper charge fixing the time of the knowledge, etc., of Gemmell Brothers Company as of the time of the loaning of the truck instead of the time of employing Tutterrow. Although Tutterrow was eighteen or nineteen years of age, had been driving automobiles and trucks for two years and had been in the employ of Gemmell Brothers Company for six

weeks during which time he frequently drove the truck in question, there is no showing that he had ever had any other accident or that he had ever previously been guilty of any specific acts of negligence or violations of the law governing the operation of automobiles and trucks. It does not seem to us that the mere opinion of the witness Pat Johnson that Tutterrow was careless and reckless and could not properly steer and control a car, was sufficient to support a verdict and judgment in personam upon the theory that he was a careless, reckless and incompetent driver who was apt and likely to injure others if permitted to drive a small Ford truck which he had already been driving for six weeks.

In our opinion no judgment in personam should have been rendered against Gemmell Brothers Company and its motion for a directed verdict should, to this extent, have been sustained. But Tutterrow's speed caused the accident, and he was running considerably more than twenty miles per hour; the truck (along with other property) was attached and released under bond; the statute fixed a lien on the truck; and the value of the truck was shown to be $250. So, we think a judgment for $250 (which however, must include the costs of the trial court) should be entered in favor of the plaintiff and against Gemmell Brothers Company and the surety on the bond which it executed to release the truck from the attachment, i. e., William Roller. We think the costs of the appeal should be adjudged three-fourths against the plaintiff and one-fourth against Gemmell Brothers Company.

The judgment of the trial court as to Gemmell Brothers Company will therefore be reversed and set aside, and a judgment will be entered in this court, as outlined above.